IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIRK PERRY,<br><br>Defendant. | CRIMINAL NO. 24-cr-00223 (CKK) |

### STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant KIRK PERRY ("PERRY") agrees to admit guilt and enter a plea of guilty to Count One of the Indictment, which charges PERRY with Conspiracy to Commit Money, Property, and Honest Services Wire Fraud, in violation of Title 18, United States Code, Sections 1349, 1343, 1346. Pursuant to Federal Rule of Criminal Procedure 11, the Government and PERRY, with concurrence of his attorney, agree and stipulate that the Government would prove the following facts at trial beyond a reasonable doubt:

1. At all relevant times, PERRY was a Supervisory Equal Opportunity Specialist who served as Program Director for the Employment Adjudication Division ("EAD") of the Office of the Assistant Secretary for Civil Rights ("OASCR") within the United States Department of Agriculture ("USDA") located in the District of Columbia.

2. PERRY's duties included monitoring the performance of Company 1 and Company 2, which were contracted by OASCR to hire contract employees to perform Equal Employment Opportunity ("EEO") services on its behalf. PERRY also exercised daily oversight of the contract employees and verified contract employee timesheets.

3. PERRY was Defendant JAMAREA GRANT's ("GRANT") uncle. PERRY and GRANT both lived in the Cleveland, Ohio metropolitan area.

4. From August 2015 through March 2018, GRANT was employed as an Equal Opportunity Assistant ("EOA") for Company 1 under the contract with OASCR. When Company 2 replaced Company 1 as the contract vendor in March 2018, GRANT's employment with Company 1 rolled over to Company 2. From March 2018 through November 2022, GRANT was employed as an EOA for Company 2 under the OASCR contract.

5. PERRY referred GRANT to Company 1 and completed GRANT's application and onboarding paperwork. Prior to being hired by Company 1, GRANT had no background, education, or experience in EEO-related matters.

6. As an EOA, GRANT was hired to provide equal opportunity review and audit services to OASCR, including reviewing, editing, and drafting reports pertaining to EEO complaints filed against USDA agencies and offices.

7. The Company 1 and Company 2 contracts required all contract employees to work onsite at USDA's offices located in the District of Columbia. GRANT never accessed any USDA building in the District of Columbia, and never performed any work at a USDA worksite. Instead, GRANT worked remotely from the Cleveland area.

8. The Company 1 and Company 2 contracts required all work to be performed using government-provided equipment and accounts. GRANT never received any office equipment from OASCR, Company 1, or Company 2, never had a USDA or OASCR email address, and never had a user identification to access any government system.

9.   From August 2015 through November 2022, while working as an EOA for Company 1 and Company 2, GRANT reported exclusively to PERRY and received his work assignments directly from PERRY.

10.  Some weeks PERRY did not send GRANT any work assignments at all. Other weeks PERRY sent GRANT only a small number of work assignments.

11.  Many of the work assignments that PERRY sent to GRANT were reports that had already been reviewed by other EOAs and/or were already in final form and did not require further review. PERRY also sometimes sent the same reports to GRANT multiple times.

12.  GRANT was paid to work at least 40 hours per week, and sometimes in excess of 40 hours per week, but he only worked a fraction of the hours he was paid for during his employment with Company 1 and Company 2.

13.  GRANT was supposed to submit weekly timesheets to Company 1 and Company 2 that reported his hours worked and/or number of reports reviewed.

14.  Instead of submitting his own timesheets, GRANT allowed PERRY to submit GRANT's timesheets. PERRY falsified the number of hours GRANT worked and/or the number of reports GRANT reviewed, including by falsely reporting that GRANT worked in excess of 40 hours per week and worked on weekends and holidays.

15.  As a result, Company 1 and Company 2 submitted invoices to OASCR in Washington, DC that included hours that GRANT had not actually worked, and/or reports that he had not actually reviewed.

16.  PERRY then approved those invoices despite knowing that he had falsified the number of hours GRANT had worked.

3

17. Once each invoice was approved, payment to Company 1 and Company 2 was processed by the U.S. Treasury Invoice Processing Platform.

18. Company 1 and Company 2 then paid GRANT according to the hours worked and/or number of reports reviewed that were submitted on his timesheets, using money the contracting firms received from the government.

19. From August 2015 through March 2018, Company 1 paid GRANT approximately $195,480 under its contract with OASCR.

20. From March 2018 through November 2022, Company 2 paid GRANT approximately $203,839 under its contract with OASCR.

21. The salary paid by Company 1 and Company 2 was direct-deposited from Company 1 in Maryland, and from Company 2 in Virginia, through interstate wire transmissions into an online bank account in GRANT's name.

22. PERRY set up the bank account in GRANT's name into which GRANT's salary was direct-deposited. PERRY controlled online access to the account and received the account statements. GRANT received and used a debit card with which he made cash withdrawals from the account in Ohio, but lacked the ability to make other transactions.

23. From September 2015 through March 2020, PERRY transferred approximately $124,444 from GRANT's bank account to a PayPal account under PERRY's control.

24. PERRY also arranged for the employment by Company 1 of Camille Perry, Alicia Thompson, and Kayla Jackson ("Jackson"). Like GRANT, PERRY supervised those individuals and they only worked a fraction of the hours they were paid for during their employment with Company 1.

25. From January 2015 to July 2015, PERRY transferred approximately $17,125 from Jackson's bank account to a PayPal account under PERRY's control.

Respectfully Submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY

　/s/ Brian P. Kelly　
BRIAN P. KELLY
Assistant United States Attorney
D.C. Bar No. 983689

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 04/07/2025

/s/ Kirk Perry
Kirk Perry
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 04/07/2025

Brandi Harden
Counsel for Defendant