UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | 24-cr-00223-CKK-1 |
| : | |
| **KIRK PERRY,** : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

    Kirk Perry, by and through counsel, respectfully submits this Memorandum in Aid of Sentencing. Mr. Perry will appear before the Court on December 4, 2025, for sentencing after pleading guilty to one count of Conspiracy to Commit Money, Property, and Honest Services Wire Fraud, in violation of Title 18, United States Code, Sections 1349, 1343, and 1346.

    For the reasons set forth below, Mr. Perry requests that this Court impose a variance, specifically a sentence of nine months of home confinement and 18 months of supervised release. Mr. Perry's request reflects a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S. Code section 3553.

**INTRODUCTION**

    Mr. Perry has accepted full responsibility for his actions. He acknowledges that his conduct was shameful and that this offense is serious. He pleaded guilty to a felony, made no excuses for his behavior, and did not point the finger at anyone else. According to friends, family members, and community leaders, Mr. Perry is a kind, hard-working, and compassionate man. A devoted father and partner, Mr. Perry—the first lawyer in his family—has always worked hard to support the people in his life.

    Mr. Perry regrets his actions and has learned from his many mistakes. He is not a habitual criminal who intended to cause harm to another human being. Rather, an initial bad decision led

to several more after Mr. Perry lost both of his parents, was in financial ruin, and could not adequately support his family.

Just three years after Mr. Perry graduated from law school in 1995, his mother, Ms. Dorothy Perry, died of a heart attack. Four years after his mother died, in 1999, his father, Raymond Perry, was murdered. At that point, Mr. Perry became financially responsible for his brothers and sisters, his nieces and nephews, and his own children and family. Over time, Mr. Perry found himself in a desperate position, and keeping up financially became untenable. Unfortunately, Mr. Perry resorted to illicit means and made a series of decisions that he acknowledges were wrong as he attempted to provide for his family.

In determining his sentence, Mr. Perry respectfully requests that the Court consider a variety of factors, including, but not limited to, his demonstrated and deep commitment to his family and community service, as well as his coaching youth basketball. According to his family, Mr. Perry has many exceptional qualities, most notably his devotion to family and the important role he plays in his community. Mr. Perry respectfully requests that this Court impose a variance, specifically a sentence of 9 months of home confinement and 18 months of supervised release. A variance would mitigate the harmful impact of incarceration while still serving the purposes set forth in section 3553.

## SENTENCING STATUTORY AND GUIDELINES ANALYSIS

When determining the appropriate sentence, this Court must weigh factors that include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the United States Sentencing Commission guidelines, and the need to avoid unwarranted disparities among similar offenders. 18 U.S.C. § 3553(a); *see generally* U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2024). The Court must weigh

each of these factors when determining the appropriate sentence with the least amount of imprisonment necessary pursuant to section 3553(a). *Id*.

The Supreme Court has emphasized that the guidelines are merely one of the factors that district courts consider when fashioning a reasonable sentence and that they are not to be weighed more heavily than the other factors. *See Rita v. United States*, 551 U.S. 338, 351 (2007); *Gall v. United States*, 552 U.S. 38, 47 (2007). A sentencing court may not presume that a sentence within the Guidelines range is automatically reasonable or that a sentence within the Guidelines range is more reasonable than a sentence outside of the range. *Gall*, 552 U.S. at 47. Courts have wide discretion to determine an appropriate sentence and must only "treat the Guidelines as the starting point and initial benchmark." *Id*. at 49; *see United States v. Booker*, 543 U.S. 220, 258 (2005) (holding that the guidelines are merely advisory and can only recommend a sentencing range).

Courts must impose the minimum sentence necessary to comply with the purposes of sentencing. When determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, the length of the term, a court "shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added). Courts are required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in section 3553(a) (emphasis added). *Id*.

In addition, district courts should not presume that the Guidelines range for a particular case will always satisfy the section 3553(a) factors because the Guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. Rather, district courts have an independent responsibility to ensure that these factors are met and

may vary from a guidelines sentence if it does not satisfy the section 3553(a) factors or if justice warrants a different sentence. *See id.* at 351.

Considering the factors enumerated in § 3553(a), courts are not required to point to "'extraordinary' circumstances to justify a sentence outside the Guideline range." *Gall*, 552 U.S. at 47. A below-guidelines sentence may be appropriate if the Court determines that the guideline sentence "falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines . . . fails to properly reflect § 3553(a) factors." *Rita*, 551 U.S. at 351.

### I. MR. PERRY'S PERSONAL HISTORY AND THE NON-VIOLENT NATURE OF THE OFFENSE WEIGH IN FAVOR OF A SENTENCE OF HOME INCARCERATION.

The Court must consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1); *Gall*, 552 U.S. at 50 n. 6. That directive is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 484 (2011) (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). Congress codified this principle at 18 U. S. Code section 3661, which states that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct." *Id.* (citing 18 U.S.C. § 3661).

The non-violent nature of Mr. Perry's offense and Mr. Perry's history and personal characteristics strongly support a sentence of home incarceration. Mr. Perry makes no excuse for his conduct, but a more complete picture of life and financial strain provides context for how he has ended up in his current situation and why he will not re-offend.

### A. Trauma and the loss of his parents significantly impacted Mr. Perry.

Mr. Perry's mother, Mrs. Dorrothy Perry, was just 16 when she married Mr. Perry's father, Raymond Perry. Kirk Perry was born in 1964 and is the middle of three children. Mr. Perry's father worked as a brick mason and owned a small construction business. His mother worked as a cook for Oberlin School District and at Green Acres juvenile group home. Although his parents tried to provide a middle-class upbringing, Mr. Perry's father was an alcoholic who drank incessantly and beat and abused his mother. This trauma negatively impacted Mr. Perry, but he did the best he could to survive.

Mr. Perry graduated from Oberlin High School in 1983, Hamilton College in 1987, and Case Western University School of Law in 1992. He passed the Ohio bar exam and was admitted to practice that same year.

However, just three years after graduating from law school, Mr. Perry's mother died suddenly of a heart attack in 1995. Mr. Perry was lost. He did his best to help care for his siblings, but financially, it was a strain. In 1995, Mr. Perry's sister had two children she cared for: a newborn Jameara Grant and his sister, Mr. Perry's niece and nephew. On one occasion, Mr. Perry's sister and her two children moved in with Mr. Perry because she had been evicted from her residence. Mr. Perry and his family were undoubtedly struggling financially.

After Mr. Perry's mother died, his father began a new relationship with Ms. Caryle Howe. Four years later, in 1999, Ms. Caryle Howe stabbed and killed Mr. Perry's father. Ms. Howe grabbed a steak knife from the kitchen and sank it into Mr. Raymond Perry's chest. The knife penetrated more than three inches into his chest and the left ventricle of his heart. Mr. Raymond Perry ran out of the front door and collapsed on the lawn.

Mr. Kirk Perry's nephew, and co-defendant, Jamaera Grant, was one of two grandchildren inside the residence during the murder and testified at the trial. From that point on, Mr. Kirk

Perry had no male role models for guidance and support and began to bear the burdens of financial hardship. This new role has accompanied Mr. Perry every moment since that day and instilled in him a need to provide for his family and loved ones—especially his siblings, nieces, and nephews.

Mr. Perry is the only member of his family to have gone to college and is the first lawyer in his family. As such, he felt immense pressure to care for his older brother and younger sister. The murder of his father made Mr. Perry "the man of the family," as Mr. Perry's older sister put it, and he was her "protector in every sense of the word." Even now, when interviewed, his sister states that because their parents are gone, "we are all we got."

Mr. Perry endured significant financial hardship, including a tumultuous life rife with alcoholism, domestic violence against his mother, and the murder of his father at the hands of his domestic partner. Mr. Perry, unfortunately, went down the wrong path, resorting to illicit means and making a series of decisions he acknowledges were wrong as he attempted to provide for his family and loved ones. He greatly regrets the actions that led to his current situation and has learned from the experience, using this time to reflect on his conduct.

In considering his sentence, Mr. Perry respectfully requests that the Court consider a variety of factors, including but not limited to Mr. Perry's demonstrated and deep commitment to his family and community.

**B. Mr. Perry was a hard-working lawyer who fell upon hard times.**

A peaceful man with a strong work ethic, Mr. Perry is far from a career criminal—rather, he is a dedicated father and brother who has consistently worked hard throughout his life to support his family. After obtaining his first job, he financially supported his older brother, his

youngest sister, and their children. Mr. Perry did everything he could to support his family, even to his own financial detriment.

Records make clear that Mr. Perry was financially struggling despite his government salary. In 2002, the same year his first son was born, his home was also foreclosed. Records report that a judgment of $8,097 was entered against him. That same year, Mr. Perry filed for Chapter 13 bankruptcy. Just one year later, the case was closed because Mr. Perry was unable to make the required payments.

The following year, in 2003, Mr. Perry filed a second Chapter 13 bankruptcy. This bankruptcy petition included his previous creditors and added an IRS debt. In 2005, Mr. Perry's second son was born, and Mr. Perry's bankruptcy case was again closed because Mr. Perry was financially unable to make the required payments.

In 2005, with two toddlers to care for, Mr. Perry filed a third Chapter 13 bankruptcy, but his case was dismissed. It was clear that Mr. Perry was financially drowning. Despite his salary from 1999 to 2021, the liens and judgments against Mr. Perry totaled more than his annual salary. Unfortunately, Mr. Perry was financially unable to support and take care of his family. Over time, as evidenced by three bankruptcies, Mr. Perry found himself in a desperate position.

**C. Mr. Perry is deeply committed to his family and community.**

Mr. Perry is a loving parent who has consistently worked hard to support his family, including when he fell on hard times. Despite the challenges Mr. Perry has faced in his life, those who know him compliment him on the value he adds to their lives. Mr. Perry's family, friends, and former co-workers describe him as kind, caring, loyal, trustworthy, selfless, hard-working, generous, humble, compassionate, considerate, peaceful, helpful, respectful.

Mr. Perry has an absolute devotion and unwavering commitment to family, friends, and community. Despite his own financial difficulties, Mr. Perry was active in his community. He volunteered coaching basketball and organizing Amateur Athletic Union (AAU) basketball tournaments. Over the past twenty-five years, Mr. Perry has coached several teams, including "Next Level Hoops," and has mentored many youth basketball players in the Oberlin area. Coaches refer to him as "Captain Kirk" and he is revered by many in the AAU world. Mr. Perry's sister describes her brother as a "pillar of the community" in Oberlin and stated that he has helped and mentored many young people through his work with AAU basketball. His sister knows that Mr. Perry is extremely remorseful and, despite what happened, she has forgiven him for his actions and including her son. Sentencing Mr. Perry to imprisonment will only alienate him from his family and community. He is a far more valuable member of society outside of prison, where he can contribute, than inside. Mr. Perry's continuing commitment to those he cares about strongly weighs in favor of home incarceration.

II. **A SENTENCE OF HOME INCARCERATION WOULD APPROPRIATELY REFLECT THE SERIOUSNESS OF MR. PERRY'S OFFENSE AND PROVIDE JUST PUNISHMENT.**

Another factor that the Court must consider when sentencing is the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A)-(B). Mr. Perry has acknowledged and taken responsibility for the damage his conduct caused. While Mr. Perry acknowledges the seriousness of the offense, it was economic in nature. A sentence of incarceration would not advance the aims of sentencing and would deprive his family and the community of Mr. Perry's invaluable contributions.

Mr. Perry has fully accepted the wrongfulness of his actions and acknowledges that he has made poor decisions that are wholly inconsistent with his demonstrated character, history, and moral compass. Mr. Perry does not minimize or rationalize his actions here. He realizes that his financial woes were minimal compared to the emotional heartache that he is currently putting his family through. Mr. Perry's full acceptance of responsibility and deep contrition for his actions weigh in favor of a sentence of home incarceration.

As discussed above, Mr. Perry is a pillar for his sons, siblings, nieces, nephews, and community members. A sentence of home incarceration would allow Mr. Perry to get his life back on track. While Mr. Perry is aware of how challenging life will be after this felony conviction and the loss of his law license, he is ready to face the challenge.

Mr. Perry used the proceeds of his crimes, notably the PayPal account largely to better provide for his family, AAU team, and loved ones. A sentence below the guidelines range is appropriate because the loss table amounts are not indicative of culpability or seriousness of the offense. Courts have explained that "the amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004).

III. **A SENTENCE OF HOME IN CARCERATION WILL HAVE A DETERRENT EFFECT ON MR. PERRY AND WOULD NOT CREATE UNWARRANTED SENTENCE DISPARITIES**.

This Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(B)-(C), as well as "[t]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, a sentence of home incarceration will prevent

sentencing disparities among similarly situated defendants and will provide a deterrent effect for Mr. Perry in the future.

### A. Preventing Sentencing Disparities.

The United States Sentencing Commission maintains statistics related to sentencing for theft, property destruction, and fraud. In the period analyzed, 39.9% of those convicted of such crimes received a variance from the guideline range, and, of those offenders who received a downward variance, the average sentence was 22 months. See Quick Facts: Theft, Property Destruction, and Fraud Offenses Fiscal Year 2024, UNITED STATES SENT'G COMM'N (2024), available at

https://www.ussc.gov/research/quick-facts/theft-property-destruction-fraud.

This data shows that variations from the guidelines are not uncommon.

The plea agreement reserves Mr. Perry's right to seek a sentence below the guidelines range based on section 3553(a) factors. As indicated above, those factors weigh strongly in favor of granting Mr. Perry a sentence below the applicable guidelines range—specifically, 9 months of home incarceration—in this case.

### B. The Need for Adequate Deterrence.

Mr. Perry's felony conviction, eventual loss of his law license, and restitution of $399,319 have already had a strong deterrent effect on him. He understands the significance of this experience, and it has unquestionably had a sobering effect. Mr. Perry acknowledges that this situation has been an awakening and a great lesson to him that has taught him that he needs to return to the values and principles that were instilled in him.

Mr. Perry has lost friends, his reputation, and the high esteem in which people held him. Mr. Perry need not lose anything else. Firmly committed to being a positive force for his family

and community, Mr. Perry is genuinely remorseful and determined to ensure that his children and others in his community can learn from his mistakes.

Research demonstrates that although the certainty of being caught and punished has a deterrent effect, any "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tony, *Purposes and Functions of Sentencing*, 34 CRIME & JUST. 1, 28 (2006); see Ziv D. Gabby, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 447-48 (2007) ("Certainty of punishment is empirically known to be a far better deterrent than its severity."). Research regarding white collar offenders found no difference in the deterrent effect of probation and that of imprisonment. *See David Weisberg et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); s*ee also Gabby*, supra, at 448 49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). This experience has already more than deterred Mr. Perry from any future criminal conduct

Research further supports that a sentence of nine months of home incarceration and eighteen months of supervised release will continue to have a deterrent effect on Mr. Perry. Incarceration will not serve deterrent purposes; rather, it will further hurt his family, notably his sons, who are both in college.

C.  The Need for the Sentence Imposed

A sentence of nine months of home incarceration and 18 months of supervised release will serve as just punishment and provide adequate deterrence. Incarceration in a federal prison is destructive and debilitating. Mr. Perry will also face severe collateral consequences stemming

from his conviction. Being convicted of felony offenses comes with a myriad of lifelong consequences. *See United States v. Nesbeth*, 188 F. Supp. 3d 179 (E.D.N.Y. 2016) (holding that a court may properly consider the host of collateral consequences that attend a felony conviction, including loss of benefits and difficulty finding future employment, when fashioning a sentence). This conviction will result in the loss of Mr. Perry's law license and other benefits. These are significant consequences that this Court should consider in determining just punishment.

With respect to general deterrence, the government's request for a sentence of 33-41 months would serve no additional deterrence benefit. Lengthy prison sentences do *not* appear to have a "chastening" effect on crime, the available data showing that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime.[1]

### D. The Rehabilitative Purpose of Sentencing Warrants A Sentence of Home Incarceration.

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed… to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." This purpose militates strongly in favor of a sentence of home incarceration.

Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). In other words, locking someone up neither achieves nor is a substitute for rehabilitation or achieving the goals set forth in § 3553(a)(2)(D). Thus, imprisoning Mr. Perry for 33-41 months, as requested by the government, cannot be justified as a form of rehabilitation. Nor is the incapacitation strategy of crime

---

[1] *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice (May 2016) at 1-2, available at https://nij.ojp.gov/topics/articles/five-things-about- deterrence#note4.

prevention advanced by imprisoning Mr. Perry for 33-41 months. On the other hand, a sentence of nine months of home incarceration and 18 months of supervised release will avoid sentencing disparities.

**IV.  MR. PERRY'S MEDICAL CONDITION PURSUANT TO U.S.S.G. § 5H1.4 SUPPORTS A VARIANCE, SPECIFICALLY A SENTENCE OF HOME CONFINEMENT**

On July 31, 2024, Mr. Perry suffered a severe post-cerebrovascular accident—stroke. He has significant health issues as a result of the stroke, including delayed speech and cognitive and memory problems. Mr. Perry also suffers from essential hypertension, hyperlipidemia, chronic venous insufficiency and stasis, chronic renal impairment, and obesity. Mr. Perry has lost his ability to perform simple daily tasks and requires the assistance of a cane for walking and balance.

Pursuant to U.S.S.G. § 5H1.4, "Physical condition … may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." *See*, U.S.S.G. § 5H1.4. "[A]n extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." *Id*.

Mr. Perry is sixty years old and has been deemed 100% disabled by the Social Security Administration (SSA). He has limited mobility and cannot operate a motor vehicle. As a result of his stroke, Mr. Perry has severe physical and cognitive impairments that impose exertional and non-exertional limits. Mr. Perry has been found totally disabled under Sections 216(i) and 223(d) of the Social Security Act and eligible for disability payments pursuant to 1614(a)(3)(A).

Therefore, Mr. Perry's medical conditions identified in the PSR indicate that he is "seriously infirm" and constitute "extraordinary physical impairment," warranting a variance.

The Probation Office has also identified Mr. Perry's physical impairment—specifically his limited mobility, memory loss, and delayed speech as a result of the stroke as factors that warrant a variance from the applicable guideline range. Mr. Perry does not dispute any aspect of the United States Probation Office's calculation of the guideline range in this case; however, Mr. Perry submits that the Court should vary and impose a sentence of home incarceration. A sentence of home incarceration is not precluded by any statute or by the sentencing guidelines. The requested sentence would be consistent with Congress' directive that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious offenders who pose the most dangerous threat to society." 18 U.S.C. § 3551. Mr. Perry does not pose a threat to society, and as a result of his impairment pursuant to U.S.S.G. § 5H1.4, he should receive a sentence of home incarceration.

## CONCLUSION

For the reasons stated above, the most appropriate sentence for Mr. Perry is nine months of home incarceration and eighteen months of supervised release. Mr. Perry does not deny the seriousness of the crime to which he pleaded guilty. He has taken responsibility and is deeply sorry for his actions, the harm they caused, and the pain he has forced his family to endure.

As the Court determines an appropriate sentence, Mr. Perry respectfully requests that the Court consider Mr. Perry's physical and cognitive impairment, and his commitment to his family and community. Mr. Perry respectfully requests that this Court impose a sentence of nine months of home incarceration and eighteen months of supervised release. Such a sentence is reasonable and sufficient to serve the criteria set forth in section 3553.

Respectfully Submitted,

_____
Brandi Harden, Esq.
Counsel for Kirk Perry
Bar No. 470-706
Harden | Law, PLLC
400 7th Street NW, Suite 604
Washington, DC 20004
202.621.8268
b@hardenlawoffices.com